# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>CONCOX Model GT06E Global Positioning System (GPS) Tracker; Seizure Number: 2022250400144401-0006 ("Target Device") | Case No. '22 MJ3589 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Devin Kaun*
Applicant's signature

Devin Kaun, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: October 11, 2022

*Barbara L. Major*
Judge's signature

City and state: San Diego, California      Hon. ~~Michael S. Berg~~ Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

This warrant applies to records and information associated with the CONCOX Model GT06E Global Positioning System (GPS) Tracker, Seizure Number: 2022250400144401-0006 (Target Device) found in the center dash area of the defendant, Blendida Serrano-Jara's, Nissan Altima by the United States' vehicle expert during the vehicle inspection on September 8, 2022.

Target Device is currently stored in the custody of Homeland Security Investigations at 2055 Sanyo Avenue, Suite 120, San Diego, CA 92154.

ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search GPS Target Device described in Attachments A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the Target Device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the GPS tracking devices will be electronic records, subscriber information, and location data, for the period of January 30, 2022 to June 26, 2022:

    a. tending to indicate efforts to import heroin, or some other federally controlled substance from Mexico into the United States, and/or conspiracy to do the same;

    b. tending to identify facilities and/or locations used to facilitate the importation of heroin, or some other federally controlled substance from Mexico into the United States;

    c. tending to identify travel to or presence at locations involved in the importation of heroin, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    d. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    e. tending to place in context, identify the creator or recipient of, or establish the time of creation of records, or data involved in the importation of heroin and/or conspiracy to import heroin

which are evidence of violations of Title 21, United States Code, Sections 952, 960 (importation of controlled substances) and Title 21, United States Code, Section 963 (conspiracy to import).

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Devin Kaun, being duly sworn, declare and state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device:

> CONCOX Model GT06E Global Positioning System (GPS) Tracker
> Seizure Number: 2022250400144401-0006
> ("**Target Device**")

as further described in Attachment A. Agents seized the **Target Device** from the center dash area of a vehicle driven by Blendida Guadalupe Serrano-Jara ("SERRANO") on June 26, 2022, incident to her arrest for importation of heroin at the Customs and Border Protection ("CBP") San Ysidro Port of Entry ("POE"). *See United States v. Serrano-Jara*, 22-CR-1542-TWR. The **Target Device** is currently stored as evidence at the Homeland Security Investigations ("HSI") 2055 Sanyo Avenue, Suite 120, San Diego, CA 92154.

2. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963 (Importation of Controlled Substances), as described in Attachment B.

## EXPERIENCE AND TRAINING

3. I am a law enforcement officer of the United States (U.S.) within the meaning of Title 18, U.S. Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, U.S. Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the U.S. and to execute warrants issued under the authority of the U.S.

4. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August, 2020. I am currently assigned to the HSI Office of the

Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

6. Based on my training and experience, I have become familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by Drug Trafficking Organizations (DTOs). I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking.

7. Specifically, I have learned that narcotics traffickers and DTOs utilize GPS tracking devices to remotely monitor the movements, locations, communications and progress of those they employ to transport controlled substances; and of those they employ to arrange the disposition of proceeds from the sale of controlled substances.

8. I have learned that many modern GPS tracking devices such as the **Target Device** are monitored remotely by DTO members using cellular telephone networks. Drug traffickers are able to monitor GPS tracking devices using proprietary databases which can be accessed using servers from outside the United States. Also, I have learned that GPS tracking devices such as the **Target Device** contain internal storage that may contain information about network providers, subscriber information, audio communications and location data.

9. I have discovered vehicle GPS tracking devices during the course of my career, including tracking devices installed in a discreet location, similar to the **Target**

**Device**. Also, based on post-arrest interviews with narcotics trafficking offenders and informants, my colleagues and I have learned that drug traffickers may not inform drivers that their vehicle is being tracked. Instead, they may tell their drivers that they will be watched, and their progress will be monitored to ensure they do not deviate from their plan.

10. Based upon my training, experience, consultation with colleagues, and the facts and opinions set forth in this affidavit, I understand that DTO members involved in transporting valuable quantities of narcotics utilize GPS tracking devices to assist with ensuring their shipments have reached their destination, without interference by law enforcement officials. I have similarly learned that drug traffickers recruit and employ drivers who are strangers, to whom they have little trust or confidence. Additionally, DTOs recruit drivers who are often unfamiliar with the routes and territory which they are instructed to travel. As a result, drug traffickers may rely on GPS tracking devices to assist with directing the travel of their drivers and ensuring their reliability and trustworthiness.

11. Vehicle GPS tracking devices often utilize Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules. SIM Cards enable drug traffickers to monitor the device remotely using telephone networks. SIM Cards are smart cards that may store data for cellular telephone subscribers. SIM Cards may include user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.

12. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

 a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

 b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations; and

3

   c. Drug smugglers and traffickers will use GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

13. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that GPS devices can contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS Devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS device. Specifically, based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies, I have learned that searches of GPS devices sometimes yields evidence:

   a. tending to indicate efforts to import heroin, or some other federally controlled substance from Mexico into the United States, and/or conspiracy to do the same;

   b. tending to identify facilities and/or locations used to facilitate the importation of heroin, or some other federally controlled substance from Mexico into the United States;

   c. tending to identify travel to or presence at locations involved in the importation of heroin, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

   d. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   e. tending to place in context, identify the creator or recipient of, or establish the time of creation of records, or data involved in the importation of heroin and/or conspiracy to import heroin.

14. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I have learned that

drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning sometimes includes the use of GPS devices.

15. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with Customs and Border Protection Officers (CBPOs) and other HSI Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated. All dates and times listed below are also approximate.

**FACTS SUPPORTING PROBABLE CAUSE**

16. On June 26, 2022, at approximately 6:25 a.m., SERRANO, a border crosser, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane number 26. SERRANO was the driver, sole occupant, and registered owner of a 2006 Nissan Altima ("the Altima") bearing Mexican license plates.

17. A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from SERRANO. SERRANO stated she was crossing the border to go to Ross and Walmart stores in San Ysidro, California. The Altima was referred to secondary by an Anti-Terrorism Contraband Enforcement CBPO working pre-primary.

18. Following the referral, a CBPO operating the Z-Portal X-Ray machine detected anomalies in the doors of the Altima.

19. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the driver side rear door of the Altima.

20. Further inspection of the Altima resulted in the discovery of five packages concealed in the doors of the Altima, with two packages concealed in the driver's side rear

5

door and one package concealed in each of the remaining doors. The total approximate weight of the packages was 5.98 kilograms (13.18 pounds). A sample of the substance contained within the packages field tested positive for the characteristics of heroin.

21. SERRANO was placed under arrest and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

22. The **Target Device** was found in the center dash area of the Altima by the United States' vehicle expert during the vehicle inspection on September 8, 2022.

23. Prior to finding the **Target Device**, the United States found and searched a cellular telephone that was seized at the time of SERRANO's arrest on June 26, 2022. On June 27, 2022, the United States obtained a warrant to search the cell phone seized from SERRANO. *See* 22-mj-02299-AHG.[1] The search of SERRANO's phone yielded evidence relating to SERRANO's involvement in drug trafficking that included pictures, contacts, call logs, and messages. Many of the calls and communications overlap with her history of crossing the Altima into the United States, as described further below.

24. TECS records reflect that SERRANO began crossing the Altima on or about January 30, 2022. Between January 30, 2022 and June 26, 2022, the defendant crossed the Altima inbound to the United States approximately 18 times.

25. Between May 26, 2022 to June 26, 2022 (the date range for the initial search warrant of SERRANO's phone), SERRANO crossed the Altima inbound into the United States five times, including the date of her arrest. Before and sometimes after she crossed, she had brief (generally less than two minute) calls with two contacts: "Señor de Linea" (roughly translates to Sir of the Line) and "Pancho Nuevo" (roughly translates to New Pancho). During this time period, SERRANO usually had calls with "Señor de Linea" once or a few times before each of her early morning inbound crossings and engaged in calls lasting anywhere from a few minutes to less than a minute. SERRANO also often had calls

---

[1] On September 2, 2022, the United States obtained a second warrant to search the phone that expanded the time period for which evidence could be seized from an initial 30-day period to the date range of December 30, 2021 to June 26, 2022. *See* 22-mj-03233.

6

with "Pancho Nuevo" the night before her inbound crossings and maintained contact with "Pancho Nuevo" usually with multiple brief calls before, during, and after her travel to the United States. Agents called and interviewed "Señor de Linea," who denied knowing SERRANO. Agents attempted to call and interview "Pancho Nuevo," but he did not answer. Based on my training and experience, couriers like SERRANO often engage in brief calls with their coordinators before and after crossing loads to advise their coordinators of their location and successful crossing.

26. Additionally, on June 12, 2022, SERRANO crossed into the United States at approximately 6:10 a.m. Examination of her phone showed that, on that date, SERRANO took video and photographs of herself in the Los Angeles area around mid-day. SERRANO crossed back into Mexico that same evening (June 12) at approximately 3:56 p.m. Days later, SERRANO sent one of her Los Angeles photos to a contact saved as "Carla Villa" in her phone and stated, "I was supposedly working here riding around in the red pick-up that's in the back." Notably, the large red pick-up truck was not the load vehicle (an Altima) and TECS records did not reflect SERRANO crossing any red trucks into or out of the United States. Agents called and attempted to interview "Carla Villa." During the call, a female answered and identified herself as a friend of SERRANO. However, when agents asked "Carla Villa" about the load vehicle, she disconnected the phone call.

27. On June 21, 2022, SERRANO crossed into the United States at approximately 7:40 a.m. One minute later, at approximately 7:41 a.m., SERRANO sent an audio message to "Pancho Nuevo" stating, "Hey, I crossed already. I'm coming. I'm headed up." Pancho Nuevo respond via audio message, "All right, then. All right. You're set." SERRANO later sent an audio message to Jimmy (SERRANO's significant other) explaining that she was getting gas in the Los Angeles area. SERRANO crossed back into Mexico at approximately 3:33 p.m.

28. On June 26, 2022, the date of her arrest, SERRANO entered the United States at approximately 6:30 a.m. Approximately ten minutes earlier, at 6:20 a.m., Jimmy messaged SERRANO, "May God bless you and protect you[.]" SERRANO was arrested

7

shortly thereafter with approximately 5.98 kilograms (13.18 pounds) of heroin concealed in her vehicle. At primary, SERRANO had indicated that she was crossing to shop at a Ross and Walmart in San Ysidro.

29. Based upon my experience and investigation in this case, including the facts described above, I believe that SERRANO was knowingly involved in narcotics trafficking activities. Even if SERRANO was unaware, evidence from the vehicle tracker found in her car (the **Target Device**) would be relevant evidence of where the DTO was directing her to travel. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of SERRANO, "Señor de Linea," and "Pancho Nuevo," such as GPS locations, subscriber information, dates and time of use, as well as other digital information, may be found in the memory and/or SIM card of the **Target Device.**

30. Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Accordingly, I respectfully request permission to search the **Target Device** and its contents for information beginning on December 30, 2021 (one month before SERRANO began crossing the vehicle), up to and including June 26, 2022.

## METHODOLOGY

31. It is not possible to determine, merely by knowing the GPS Tracking device make, model, and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular service providers allow GPS tracking companies and their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in a method which disables access to the network. Unlike typical computers, many GPS tracking devices do not have hard drives or hard drive equivalents and store information in volatile memory within the

8

device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS tracking devices using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

32. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

33. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

34. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

35. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Target Device** was used to facilitate violations of Title 21, U.S. Code, Section(s) 952, 960, and 963.

36. Because the **Target Device** has been securely stored since her arrest, there is probable cause to believe that evidence of illegal activities committed by SERRANO continues to exist on the **Target Device**. As stated above, the date range for this search is December 30, 2021, up to and including June 26, 2022.

9

37. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

38. I swear the foregoing is true and correct to the best of my knowledge and belief.

*Devin Kaun*
_____
Devin Kaun, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  11th  day of October, 2022.

*Barbara L. Major*
_____
HON. ~~MICHAEL S. BERG~~ **Barbara L. Major**
United States Magistrate Judge